UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. 3:21-CR-64 JD |
| TONYA ROBINSON et al. | |

**OPINION AND ORDER**

The defendants Tonya Robinson and Albert Smith have moved in limine to exclude certain evidence and testimony at their upcoming trial. (DE 235, 239.) The Government has filed its response to these motions and the Court heard from counsel on the issues raised at the Final Pretrial Conference on October 12, 2023. Therefore the motions are ripe for adjudication and the Court will deny in part and grant in part these motions as outlined in this order.

**A. Ms. Robinson's Motion In Limine (DE 235)**

Ms. Robinson's motion in limine (DE 235) requests the exclusion of three categories of evidence and testimony. First, documents from financial institutions and the Internal Revenue Service ("IRS") reflecting she did not file her tax returns for several years and her filed tax return for one year indicates a large amount of unpaid income tax. Second, casino records allegedly reflecting her gambling activities. Third, evidence related to the plea or conviction status of non-testifying co-defendants.

*1. Ms. Robinson's Motion in Limine No. 1, regarding tax and financial records, is denied.*

Ms. Robinson first objects to the introduction of documents from financial institutions and the IRS based on the records being irrelevant and unfairly prejudicial, in violation of Federal Rule of Evidence 403, and the evidence of her failure to file tax returns for certain years as other bad acts evidence prohibited by Rule 404(b).

Ms. Robinson's Rule 403 challenge lacks merit. Evidence of Ms. Robinson's income and financial status is clearly relevant to this case. Evidence showing what Ms. Robinson's income was, and what its sources were, is highly probative of whether Ms. Robinson had income from an illegal source such as fraud against the HASB. The only potential prejudice of this evidence is that it shows Ms. Robinson had income from an illegal source, which is not the *unfair prejudice* contemplated by Rule 403. The Court sees minimal risk of confusing the jury with these records as the Government has indicated it only plans to show portions of them to the jury, with their meaning and significance explained by a government investigator. Moreover, individuals file income taxes every year. Therefore, the jurors will already be familiar with the general concepts and processes being discussed. The probative value of this evidence is not substantially outweighed by unfair prejudice or confusion to the jury.

Ms. Robinson's Rule 404(b) challenge likewise fails. Rule 404(b) prohibits the use of other bad acts to show that a defendant has a propensity for acting in an unlawful manner and acted in accordance with that propensity on a certain occasion. Fed. R. Evid. 404(b)(1). However, evidence of such acts may be admissible for another purpose such as showing intent or knowledge. *Id.* at 404(b)(2). It is important to note that in admitting evidence for a permitted purpose, the Court must ensure the chain of reasoning supporting that purpose does not rely on an improper inference. *United States v. Gomez*, 763 F.3d 845, 856 (7th Cir. 2014).

Ms. Robinson offered no caselaw in support of her position that financial records and tax returns indicating she failed to file a tax return must be excluded under Rule 404(b). The precedent the Government has offered, and the Court has found is strongly adverse to her position. Evidence of failure to file tax returns is not prohibited by Rule 404(b) when it is to show knowledge that the income was illegally derived or intent to conceal the fraud. *United States v. Briscoe*, 896 F.2d 1476 (7th Cir. 1990); *United States v. Taylor*, 2019 WL 4410279, *5–*6 (N.D. Ill. Sept. 16, 2019) (In a §§ 1343 and 1349 trial, admitting tax records, which showed a failure to file, as evidence of the defendant's knowledge and intent to defraud.); *United States v. Maclin*, 2017 WL 6422502, at *2 (N.D. Ind. Dec. 18, 2017) (likewise admitting tax records as evidence of knowledge and intent to defraud). The jury's use of the evidence for this purpose does not rely on a hidden propensity inference, i.e. that Ms. Robinson and Mr. Smith committed fraud because they also committed the violation of failing to file their tax return as required by law. Instead, the jury can make the propensity free inference that the Defendants chose not to file their tax returns because they knew they had illegal sources of income and did not want to report it, and therefore expose their fraud. That being said, the Court will issue appropriate limiting instructions to the jury that they should not consider Ms. Robinson's failure to file tax returns in determining her guilt, but they may only use that evidence in considering her knowledge or intent.

Further, at the Final Pretrial Conference, the Government agreed that evidence or testimony related to Ms. Robinson's unpaid tax obligations is not relevant to the charged offenses and should not be admitted. The Government also indicated it would redact the relevant documents to omit this information. As such, pursuant to the agreement of the parties, the Court

prohibits the parties from raising the issue of Ms. Robinson's unpaid tax obligation or introducing evidence of such obligations.

At the Final Pretrial Conference the Government also indicated it seeks to admit Ms. Robinson's 2018 tax return, which was filed late, and was filed shortly after she was interviewed by investigators about her fraud scheme at the HASB. In this return, Ms. Robinson reports an adjusted gross income of $739,563, coming from her annual salary at the HASB of $67,000 and $672,696 in gambling winnings. (DE 249 at 7.) The Government agued this return is probative of what Ms. Robinson's income was at the time and, when compared with other financial records, whether she was concealing an illegal source of income. This is appropriate and allows the jury to draw a propensity free inference about what Ms. Robinson's income was.

The Government also argues it is probative of Ms. Robinson's consciousness of guilt. The proposed inferential chain for this theory is that Ms. Robinson had not filed tax returns for several years preceding her interview by federal agents, but filed this tax return reporting substantial gambling income shortly after being confronted with accusations of committing fraud by those agents. *Ergo* the jury may infer Ms. Robinson filed this return in an effort to conceal criminal income from the fraud scheme by creating a record of substantial gambling winnings. The Court agrees with the Government that this is a permissible inference. The inference that Ms. Robinson filed her 2018 tax return to conceal her criminal activity from an ongoing federal investigation, based on the timing of these events and the nature of these accusations does not require a predicate inference about Ms. Robinson's proclivity to commit bad acts. *See United States v. Hatfield*, 685 F.Supp.2d 320, 324 (E.D.N.Y. 2010) (finding that defendant's act of reporting a substantial annual bonus only after the SEC began investigating her was probative of her consciousness of guilt (*citing United States v. Hogan*, 886 F.2d 1497, 1507 (7th Cir. 1989)

(evidence that the defendant did not report the money he received suggests that he knew the payments were unlawful)). As such, this return is admissible for this purpose as well.

With that clarification of the scope of admissible tax records and related testimony, the Court will deny Ms. Robinson's first motion in limine.

### 2. Ms. Robinson's Motion in Limine No. 2, regarding casino records, is also denied.

Ms. Robinson's second motion in limine requests the Court to exclude casino records and related testimony which would show her frequenting casinos and alleged gambling losses. Ms. Robinson argues this evidence is irrelevant and unfairly prejudicial, thus prohibited by Rule 403, and the proposed casino witnesses would testify as undisclosed expert witnesses. Ms. Robinson also argues that the casino records are unreliable and do not reflect her actual wins and losses.

Ms. Robinson's argument about the reliability of these records is premature. The question of the accuracy and reliability of evidence is one for the jury to resolve at trial and not for the Court to resolve at this preliminary stage. If Ms. Robinson believes these records to be inaccurate, her appropriate recourse is through cross examination of the Government's witnesses and presentation of her own evidence to challenge the evidence's reliability.

The Court rejects Ms. Robinson's Rule 403 argument. The Court previously ruled on a similar question in *United States v. Ray*, and finds that the same result is compelled here. Evidence that Ms. Robinson was living beyond her means, as suggested by her enormous gambling losses, allows the jury to infer that she was receiving income from an illegal source and is thus probative of the issue of whether she was receiving proceeds of fraud. *United States v. Ray*, 2015 WL 5038108, at *3 (N.D. Ind. Aug. 25, 2015) (evidence that defendant was living beyond her means through her enormous gambling losses could suggest that she received

proceeds of theft, and was not barred by Rule 404(b) or Rule 403). The caselaw of the Seventh Circuit also supports this use. *United States v. Lundberg*, 990 F.3d 1087, 1098 (7th Cir. 2021) (evidence that defendant knowingly was living beyond her means was sufficient to support the jury's finding of guilt).

In addition to this evidence being highly probative, the Court notes there is no apparent unfair prejudicial value. An adult gambling in a lawfully operated casino is not a crime and it is a commonplace activity in our society, so it is very difficult to infer how the jury knowing Ms. Robinson engaged in gambling would prejudice her. To the extent Ms. Robinson is concerned about jurors with strong moral or religious convictions against gambling being biased against her, that concern is best addressed during jury selection and not through a motion in limine. Further, such evidence would be minimally confusing to the jury as it fits neatly into the Government's proffered theory on how Ms. Robinson came to have funds beyond her lawful income and what she did with them.

Lastly, the Court does not find either of the Government's proposed "casino witnesses" to be proffering expert testimony governed by Federal Rule of Evidence 702. The Government identified two employees of Four Winds Casino as witnesses, Vice President Brittany Frenchko and Mr. Robert Schau. Ms. Frenchko will testify to her personal knowledge about the process by which the casino win-loss business records were produced and what they show. While the Government needs to lay sufficient foundation to explain her basis for knowing how these records were made, explaining that knowledge is not expert testimony. Mr. Schau was a "host" for high-ranking patrons, and in that role he personally served Ms. Robinson and Mr. Smith. Mr. Schau will testify to his personal knowledge of Ms. Robinson and Mr. Smith's behavior at the casino, including the frequency and length of their visits and their enjoyment of perks provided

to high-ranking players. As both of these witnesses would be testifying to their personal knowledge of facts, and not offering opinions, they need not be qualified as experts under Rule 702 to testify in this case.

Accordingly, the Court denies Ms. Robinson's motion in limine number two.

***3. Ms. Robinson's Motion in Limine No. 3, regarding the conviction or plea status of non-testifying co-defendants, is granted.***

Ms. Robinson's third motion in limine requests that information about the conviction or plea status of any co-defendants who do not testify be kept from the jury. Ms. Robinson argues that this information is irrelevant and prejudicial and therefore barred by Federal Rules of Evidence 401 and 403. The Government agrees with Ms. Robinson's position.

Accordingly, the Court grants Ms. Robinson's motion in limine number three. The Court will restate that this prohibition only applies to non-testifying co-defendants. If a co-defendant testifies then they may be subjected to examination about their conviction and plea status pursuant to the limitations discussed by the Court at the Final Pretrial Conference, as consistent with *United States v. Gibson*. 996 F.3d 451, 466–67 (7th Cir. 2021) (discussing appropriate limits of plea and conviction status discussion).

**B. Mr. Smith's Motion In Limine (DE 239)**

Mr. Smith's motion in limine (DE 239) also requests the exclusion of three categories of evidence and testimony. First, casino records allegedly reflecting his gambling activities as well as Mr. Smith's bank records and IRS records. Second, evidence related to the plea or conviction

status of non-testifying co-defendants. Third, evidence related to the demolition of any HASB buildings.

***1. Mr. Smith's Motion in Limine No. 1, covering casino, bank, and tax records, is denied***

Mr. Smith's first motion in limine is substantively similar to Ms. Robinson's motions in limine Nos. 1 and 2 and will be denied for the same reasons. Mr. Smith seeks the exclusion of these records by arguing they are irrelevant and unfairly prejudicial, thus barred by Rule 403, and they are improper propensity evidence, thus barred by Rule 404(b).

The Court will accordingly deny this motion for the same reasons as discussed above regarding Ms. Robinson's casino, bank, and tax records.

***2. Mr. Smith's Motion in Limine No. 2, regarding the conviction or plea status of non-testifying co-defendants, is granted.***

This motion is granted in accordance with the Court's ruling on Ms. Robinson's Motion in Limine No. 3.

***3. Mr. Smith's Motion in Limine No. 3, regarding the demolition of HASB buildings, is granted.***

Mr. Smith asks the Court to exclude any evidence that earlier in 2023 several buildings owned or managed by the HASB were demolished. Mr. Smith argues this evidence is irrelevant to the crimes charged. The Government's response, and commentary at the Final Pretrial Conference, indicates they would like to use evidence of recent demolitions to show that Mr.

Smith and Ms. Robinson used false building maintenance contracts to defraud the HASB. The Government suggests they would show some of the units were demolished because they were in such a poor state of repair that demolition was the most cost-effective option. The Government would also intend to show that these demolished units were subject to maintenance contracts with the "spoke" contractors of the bank/wire fraud scheme. The Government argues this allows the jury to infer that the poor condition and demolition of these units was because necessary maintenance work was never performed, and the conspirators pocketed the allocated maintenance funds.

  The Court finds this proposed inferential chain has fairly minimal probative value on whether the defendants used money for an illegal purpose as opposed to maintenance. The evidence of demolitions is not direct proof of any theft and instead requires a somewhat attenuated chain of inferences about the rationale for demolition. This evidence may also be somewhat cumulative given the Government plans on introducing more direct evidence of HASB tenants testifying that maintenance work was never performed on their units despite contractor invoices and payment checks being issued for that work. Further, allowing this evidence also carries a high risk of undue delay by creating a "trial within a trial" about why these particular buildings were demolished as the defendants would certainly dispute the potential reasons for demolition.

  In light of these considerations, the Court will grant Mr. Smith's motion in limine Number Three as the low probative value of this evidence to prove fraud, specifically the correlation between repairs to certain housing units and demolition, is outweighed by its risk of undue delay. However, the Court reaffirmed its position at the Final Pretrial Conference that the defendants may open the door to the introduction of this evidence on rebuttal. For example, if the

defendants take the position that every dime of HASB maintenance money was properly spent, evidence that some of the demolished buildings subject to the fraudulent maintenance contracts were so poorly maintained, would be probative to rebut the defendants' point.

The Court will consequently grant this motion, with the understanding the evidence may become admissible depending on how the defendants' cases develop.

### C. Conclusion

Accordingly, the Court GRANTS in part and DENIES in part Ms. Robinson's motion in limine (DE 235.) The Court DENIES Ms. Robinson's motions No. 1 and No. 2 and GRANTS motion No. 3. The Court GRANTS in part and DENIES in part Mr. Smith's motion in limine (DE 239.) The Court DENIES Mr. Smith's motion No. 1 and GRANTS Mr. Smith's motions No. 2 and No. 3.

SO ORDERED.

ENTERED: October 16, 2023

       /s/ JON E. DEGUILIO
Judge
United States District Court